The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan Chapman and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 21 May 1998 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer at the time in question.
3. Key Risk Management Services, Inc. was the servicing agent on the risk at the time in question for the self-insured employer.
4. Plaintiffs average weekly wage on 15 January 1997, including overtime and all allowances, was $423.50, which yields a compensation rate of $282.33.
5. Defendant denied this claim, pursuant to an Industrial Commission Form 61 dated 11 March 1997.
6. A set of documents consisting of plaintiffs medical records, personnel records, interrogatory responses and Industrial Commission forms, collectively marked as Stipulated Exhibits 6A through 6I is admitted into evidence.
 ***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, who was thirty-four (34) years old at the time of the hearing before the Deputy Commissioner on 21 May 1998 and a high school graduate, began working for defendant in September 1994 as a route salesman. Plaintiffs duties in that position included delivering milk products to various customers, loading the truck and servicing accounts. Plaintiff drove different routes during the week and unloaded the dairy products without assistance at each account.
2. On 15 January 1997, plaintiff was working on his route for defendant when he first experienced the onset of pain in his back while making a delivery to a Food Lion. Plaintiff proceeded with his route to a Zip Mart, his final stop that day. As plaintiff was getting back into his truck, he again experienced the onset of pain in the left side of his back.
3. Plaintiff reported his injury to his acting Branch Manager, Mr. Harold Suber, on the Saturday of the same week.
4. Subsequent to his injury, plaintiff began treatment at Hammer Chiropractic Center with Dr. Mark McKinnon on 23 January 1997. Plaintiff reported to Dr. McKinnon that he had been experiencing headaches, low back, left leg and hip pain as well as neck stiffness, fatigue and occasional nausea. The history given to Dr. McKinnon by plaintiff included an earlier lifting injury sustained while in the military, and that his job with defendant required the lifting each day of milk crates totaling approximately eight hundred (800) pounds.
5. Diagnostic tests and x-rays performed by Dr. McKinnon documented the source of plaintiffs problems, revealing a foraminal encroachment, or opening, at the L5-Sl level.
6. Dr. John Paul Hammer, an office colleague of Dr. McKinnon, testified at his deposition that this type of encroachment meant that the lower spine was more or less extended backwards approximately two or three centimeters, which put pressure on the nerve coming out of the two bones. Dr. Hammer opined that this pressure on the nerve could cause the numbness and radiating pain that plaintiff was experiencing down his leg. Dr. Hammer also noted that this type of encroachment could result from an injury. Dr. Hammers diagnoses included a lumbar sprain-strain, lumbar radiculitis, segmental dysfunction of the lumbosacral spine and muscle spasms.
7. Initially, Dr. McKinnon proceeded with a conservative course of treatment for plaintiffs condition, including spinal manipulation from 24 January 1997 through 30 January 1997. With these treatments, Dr. McKinnon noted that plaintiffs condition improved, but that he still could not bend and continued to experience back and leg pain and stiffness.
8. His condition not having resolved, plaintiff began treatments with Dr. Mark Abel on 31 January 1997, and remains under the care of Dr. Abel through the present. According to the deposition and medical records of Dr. Abel, plaintiff presented with low back pain, numbness, occasional pain in the left foot and coolness in the legs. Upon examination, Dr. Abel, noted tenderness over the LS spine and LS paraspinous muscles, primarily on the left, marked antalgic gait and decreased sensation to soft touch on the left leg and especially the left thigh. Dr. Abel prescribed Parafon Forte DSC and Ibuprofen and recommended physical therapy.
9. After treating plaintiff for two weeks, Dr. Abel determined that a return to his former position with defendant would place plaintiff at risk of re-injury and recommended possible long term disability. On 24 February 1997, Dr. Abel referred plaintiff to Dr. Nelson Macedo, a neurosurgeon for further evaluation after physical therapy did not produce positive results. At that time, Dr. Abel opined that plaintiff was unable to return to work in any capacity.
10. Dr. Nelson Macedo began treating plaintiff on 25 February 1997. Upon examination, Dr. Macedo noted that plaintiff was tender to palpitation of the lower back and that straight leg raising produced pain in the left side of his lower back radiating down to the buttocks.
11. Myelograms and CT post myelograms, ordered by Dr. Macedo corroborated the findings of Drs. McKinnon and Abel of a L5-Sl disc protrusion. Dr. Macedo opined that plaintiffs back pain was chronic, but did not recommend surgery, due to plaintiff having radicular pain rather than nerve root compression.
12. From his diagnostic tests, Dr. Macedo also found the presence of pre-existing arthritis and evidence of a recent traumatic injury. Dr. Macedo opined that the incident occurring on 15 January 1997 aggravated an already existing condition in plaintiff, resulting in debilitating levels of pain.
13. On 15 January 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in the form of a specific traumatic incident of the work assigned.
14. Plaintiffs 15 January 1997 injury by accident materially aggravate his pre-existing back condition for the worse, resulting in debilitating levels of pain.
15. As the result of his 15 January 1997 injury by accident, plaintiff has been incapable of earning wages in his former position with defendant or in any other employment for the period of 16 January 1997 through the present and continuing.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 15 January 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in the form of a specific traumatic incident of the work assigned. G.S. 97-2(6).
2. As the result of his 15 January 1997 injury by accident, plaintiff is entitled to be paid by defendant ongoing total disability compensation at the rate of $282.33 per week for the period of 16 January 1997 through the present and continuing until such time as he returns to work or until further order of the Commission. G.S. 97-29.
3. As the result of his 15 January 1997 injury by accident, plaintiff is entitled to have defendant pay for all medical expenses incurred. G.S. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $282.33 per week for the period of 16 January 1997 through the present and continuing until such time as he returns to work or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
3. Defendant shall pay for all medical expenses incurred as the result of plaintiffs 15 January 1997 injury by accident.
4. A reasonable attorneys fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendant shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER